# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| vs. | ) | Case No. 06 CR 451 |
| | ) | |
| PERNORRIS BROWNRIDGE | ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Pernorris Brownridge was tried on narcotics charges arising from his alleged involvement with a narcotics-dealing ring controlled by a street gang. At trial, Mr. Brownridge was represented by appointed counsel, David Neely. *See* Order of July 17, 2006 (docket no. 256, appointing counsel). He testified in his own defense. The thrust of the defense case, presented in significant part via Mr. Brownridge's own testimony, was that he had been coerced by violent members of the street gang to engage in narcotics-related activity.

During his direct examination, Mr. Brownridge testified regarding numerous incidents in which he had been the victim of violence, threats, and intimidation from gang members, including some of the cooperating witnesses who had testified against him during the government's case-in-chief. Mr. Brownridge also testified that at an earlier point in time (following the filing of a criminal complaint but before return of the indictment), he had cooperated with the government's investigation and to that end had participated in debriefing sessions with a prosecutor and law enforcement agents. On inquiry by his lawyer, Mr. Brownridge testified that he had attempted to discuss the

coercion-related issues at his initial meeting with the prosecution team, but was told (by a law enforcement agent, it appears), that they were not interested in hearing about those matters, but only about the narcotics-related activities of Mr. Brownridge and various members of the street gang. Mr. Brownridge also testified that the government representatives had promised to put him in a witness protection program but had not followed up on that promise; he testified that since then, he had been the subject of further threats and intimidation from street gang members.

On cross examination, the prosecution sought to establish, as one of its primary lines of inquiry, that Mr. Brownridge had never mentioned the alleged coercion, threats, or intimidation during his meetings with a federal prosecutor and law enforcement agents. The prosecution also sought to elicit that despite his claims of living in fear, Mr. Brownridge had not sought assistance or help from the government (including from the prosecutor with whom he had met) during the period he was cooperating with the government.

The government called as a rebuttal witness Monika Bickert, the former prosecutor who had conducted the meetings with Brownridge during the period when he was cooperating with law enforcement. Before Ms. Bickert testified, defense counsel objected, saying that the government had not produced her notes of her interviews of Mr. Brownridge. The trial prosecutors reported that Ms. Bickert said she had not taken notes. Mr. Neely advised the Court that he had been at the meeting and "[s]he took notes right in front of me . . . . I can't testify, but she did take notes, and the agents took notes as well." Tr. 885. He further stated that "[w]e met with her on several occasions, and I recall her taking notes. I recall everyone in that room taking notes."

2

Tr. 886.

The Court conducted a short hearing outside the jury's presence at which Ms. Bickert testified that she had not taken notes during the first meeting with Mr. Brownridge and his lawyer, referred to as a "proffer" meeting. Tr. 888. She testified that at a second meeting a few days later, she prepared a statement for Mr. Brownridge to read before the grand jury, by typing the draft statement directly into her computer. Tr. 889-91. Ms. Bickert denied typing anything during the course of the initial proffer meeting. Tr. 889-90. She stated that prior to the second meeting at which the grand jury statement was prepared, she had "typed into my computer before the defendant arrived the beginning framework of that grand jury statement, and then it was a work in progress." Tr. 891. She printed out the first draft for Mr. Brownridge and Mr. Neely, "and then we worked on it together." *Id.* A law enforcement agent, whose name Ms. Bickert did not recall, was present during the session with Mr. Brownridge and Mr. Neely when the grand jury statement was prepared. *Id.* When asked whether the law enforcement agent(s) took notes, she said, "I think that the one agent was taking notes, yes." Tr. 892. She stated that at the initial proffer meeting, she did not take notes, but an agent did. *Id.*

The Court asked the trial prosecutors whether they had the agents' notes, and one of the prosecutors stated, "we have looked for them. We don't know who was there and where they are." Tr. 893. Ms. Bickert, asked by the Court what agent was there, said, "I am not positive, I should say, but I think the agent who was sitting by the door was Billy Warren, and I think the other one was probably one of the task force officers, and there are a number of them it could have bene." *Id.* She mentioned two

3

other names of officers / agents who might have been there: Todd Smith or Will Svilar. *Id.* The Court asked the trial prosecutors to describe what they had done to locate the notes. One of the prosecutors stated that they were unable to identify the agents or officers who were present at the meetings. The prosecutor said that they had asked all of the DEA agents and "main task force officers" working on the case to go through their notes; no notes of the meetings with Mr. Brownridge were located. Tr. 894. The Court then asked Ms. Bickert, "When you were typing up the original draft of the proffer, did you use the notes?" Ms. Bickert replied, "*I don't recall. Occasionally if I am writing up a draft of the grand jury statement, I will ask whichever agent took notes if they can fax it over, and then I will work off of that, but I don't specifically recall*." *Id.* (emphasis added). Asked by the Court, the trial prosecutors responded that they had searched the files of the US Attorney's office and had found no notes of the meetings – fax copies or otherwise. Tr. 894-95.

The defense renewed its objection to Ms. Bickert's testimony. During the argument, Mr. Neely stated that "I can't testify, but I was – and as an officer of this Court, I can state that when Mr. Brownridge began to tell the agent what the gangs were doing to him, they cut him off." Tr. 902. Both sides' counsel agreed that Mr. Brownridge had testified that this incident had occurred at a meeting at which a prosecutor was present. Tr. 903. Mr. Neely again confirmed that he was in the room, as was Ms. Bickert, when this occurred. *Id.*

The Court noted to counsel that the discussion suggested that Mr. Neely was potentially a crucial defense witness, because he could confirm Mr. Brownridge's version of the events and contradict Ms. Bickert's expected version. Tr. 904. Mr. Neely

4

said, "Yes, your Honor, but I am moving to strike this witness." *Id.* In discussing the alternatives, the Court indicated the possibility of a mistrial if Ms. Bickert testified, because Mr. Neely might have to testify as a surrebuttal witness. Tr. 905.

After further argument, the Court overruled the defense objection to Ms. Bickert's testimony. The Court said, however, that it would permit the defense to elicit that the government was unable to identify what agent was in the room, that no notes of the meetings could be located, and that the Court had entered an order on December 28, 2006 directing the preservation of agents' and attorneys' notes. The Court also stated that it would allow argument about this topic during the closing arguments. Tr. 906-08. The Court also intended (though it did not say so at the time) to seriously consider giving the jury a spoliation instruction.

After the jury returned, Ms. Bickert testified as a rebuttal witness for the government. The prosecution elicited that she had been present for a proffer meeting with Mr. Brownridge and his lawyer as well as a meeting a few days later at which a statement was prepared for Mr. Brownridge to read to the grand jury. She testified that two law enforcement officers were present at the proffer meeting. Ms. Bickert described in general terms what Mr. Brownridge had said regarding his narcotics activities and those of various members of the street gang. In response to specific questions on direct examination, Ms. Bickert testified that Mr. Brownridge had expressed no concerns or worries about any of the street gang members; he had not asked for protection; he had said nothing about being the victim of acts of violence or about observing violent acts by gang members (including the specific incidents about which Mr. Brownridge had testified); and he had described one gang member – a

5

person Mr. Brownridge had testified was extremely violent – as merely a "pest."

Ms. Bickert also testified regarding the preparation of the grand jury statement. She testified that she had not left out of the statement any topic that Mr. Brownridge had discussed. Ms. Bickert also gave some testimony that appeared to the Court to be at odds with her testimony during the hearing outside the jury's presence, specifically:

> Q: What did you rely on when you were typing up the grand jury statement to the best of your recollection?
>
> A: I typed them according to what I remembered from that day . . . .

Tr. 941. In contrast to her earlier statement that she did not recall whether she had used an agent's notes, and arguably in contrast to her testimony that she sometimes followed that practice, Ms. Bickert testified squarely that she typed up Mr. Brownridge's grand jury statement from her memory. *Compare* Tr. 894 (emphasis-added passage quoted above).

During a break in the court session, while Ms. Bickert was still on direct examination, defense counsel Mr. Neely moved for a mistrial. He said:

> Your Honor, the former prosecutor in this case has taken the stand. She has made statements that were inconsistent with what happened in the proffer. The agent that actually took the notes upon which she relied upon [sic], those notes have not been turned over to the defense. The prosecution doesn't even know who the agent was that took the notes upon which the prosecutor relied.
>
> . . .
>
> The only person that can rebut what counsel has stated on the stand is myself.

Tr. 948. Asked by the Court to elaborate, Mr. Neely described specifically what he had seen and heard during the proffer, stating that he would corroborate Mr. Brownridge's

testimony that he had attempted to bring up the issue of coercion but that a law enforcement agent had shut him down, saying they didn't want to hear about that. Tr. 950.

The Court granted the motion for a mistrial on the ground that Mr. Neely had become an important defense witness but could not act in the dual role of witness and defense counsel. The Court indicated that it would have to appoint replacement counsel for Mr. Neely. Tr. 952, 953. After Mr. Neely advised that he wanted to renew his objection to Ms. Bickert's testimony – which, if sustained, would obviate the need for Mr. Neely to testify – the Court said that it would not immediately disqualify him as defense counsel but would allow the renewed objection to be briefed.

The defense thereafter filed a motion to dismiss the charges on double-jeopardy grounds, which the Court denied. The Court again raised the issue of replacement of defense counsel, but Mr. Neely again demurred, once again saying that he wanted to file a motion seeking to preclude Ms. Bickert from testifying at a retrial. The Court suggested that it was unlikely that it would be able to rule definitively on that motion in advance of the retrial – as the issue might be affected by how matters developed at the retrial – but deferred the replacement of defense counsel to allow Mr. Neely to file and brief such a motion.

In consultation with counsel, the Court set a date for the defense to file a renewed motion to bar Ms. Bickert from testifying. Mr. Neely did not file such a motion by the due date. At a recent status hearing, the Court inquired of Mr. Neely why he had not filed the motion. Mr. Neely replied, in substance, that he believed that he could obviate any appropriate purpose for the government to call Ms. Bickert at a retrial by

7

eliminating certain points from his direct examination of Mr. Brownridge at that trial. In this regard, Mr. Neely made specific reference only to Mr. Brownridge's testimony about asking for witness protection. The Court opined that there was much more to Ms. Bickert's rebuttal testimony about her meetings with Mr. Brownridge than that one topic but said that it wanted to review the transcripts of the testimony of Mr. Brownridge and Ms. Bickert before determining what to do.

Having reviewed that testimony and the applicable law, the Court concludes that it is abundantly clear that given the present state of affairs, Mr. Neely should be, and is likely to be, a significant defense witness at the retrial of the case. It is safe to assume that Mr. Brownridge will again testify in his own defense and will again present the factual basis for a defense of coercion. It is likewise safe to assume that the government will cross-examine Mr. Brownridge by eliciting that he had mentioned nothing about coercion, intimidation, threats, or violence during his meetings with Ms. Bickert and law enforcement agents. And it is just as safe to assume that Mr. Brownridge will reply by stating that he attempted to raise these issues, but was shut down by the government representatives, in Ms. Bickert's presence. Finally, there is no question that the government will again seek to call Ms. Bickert as a rebuttal witness. Though the Court cannot predict in advance its ruling if an objection is made, at present the only safe assumption is that the Court will again permit Ms. Bickert to testify while allowing the defense to elicit evidence regarding the absence of notes, the inability to identify others present, the Court's order regarding preservation of notes, and so on.

In other words, even if Mr. Neely, as defense counsel, were to omit the topic of witness protection from Mr. Brownridge's direct examination, the track would lead

8

directly back to where the first trial was derailed – the point at which, like it or not, it became clear that Mr. Neely ought to testify as a defense witness. The only other available persons to testify on the question of what Mr. Brownridge did and did not communicate or attempt to communicate to the government are:

- Ms. Bickert – whose testimony is adverse to Mr. Brownridge and contrary to Mr. Neely's recollection; and

- the unnamed and unknown agents – who may not even be identified by the time of the retrial, and who, even if identified, are highly unlikely to give testimony consistent with Mr. Neely's expressed recollection of the events.

The applicable Rule of Professional Conduct states, in relevant part:

A lawyer shall not act as an advocate in a trial or evidentiary proceeding if the lawyer knows or reasonably should know that the lawyer may be called as a witness therein on behalf of the client, except that the lawyer may do so and may testify:

(1) if the testimony will relate to an uncontested matter;

(2) if the testimony will relate to a matter of formality and the lawyer reasonably believes that no substantial evidence will be offered in opposition to the testimony;

(3) if the testimony will relate to the nature and value of legal services rendered in the case by the lawyer or the firm to the client; or

(4) as to any other matter, if refusal to act as an advocate would work a substantial hardship on the client.

N.D. Ill. LR 83.53.7(a).

In the words of the Rule, Mr. Neely "knows or reasonably should know that [he] may be called as a witness [at trial] on behalf of his client." None of the Rule's exceptions apply. As a result, Mr. Neely may not act as trial counsel at the retrial.

The Court has one other concern that buttresses this conclusion. Though the

9

Court invited Mr. Neely to renew, in writing, his earlier oral motion to bar Ms. Bickert from testifying, Mr. Neely bypassed the opportunity to do so.  As recounted above, Mr. Neely opted instead for an alternative in which he would eliminate a topic or topics from Mr. Brownridge's testimony.  This gives rise to a legitimate concern that Mr. Neely's understandable desire to continue as counsel for Mr. Brownridge might affect, even if only unconsciously, his judgment regarding matters of trial strategy.  The Court does not think it prudent to conduct a retrial that would include a built-in issue of attorney conflict of interest, which likely would lead to still more proceedings in this Court and/or on appeal.

Mr. Neely has not asked to withdraw from the case, nor has Mr. Brownridge asked to replace him.  The absence of such a request is not controlling.  In a different but related context, the Supreme Court has made it clear that a trial court need not accept a defendant's proffered waiver of his attorney's conflict of interest, even a potential conflict, and may disqualify counsel despite such a waiver.  *See United States v. Wheat*, 486 U.S. 153, 161-62 (1988) (citing *Glasser v. United States*, 315 US. 60 (1942)).  *See also, e.g., United States v. Dempsey*, 724 F. Supp. 573 (N.D. Ill. 1989) (disqualifying defense counsel representing multiple clients despite clients' express waivers of conflicts).

Finally, the Supreme Court's decision in *United States v. Gonzalez-Lopez*, 548 U.S. 140 (2006), to the effect that erroneous disqualification of the defendant's counsel of choice entitles him to automatic reversal of his conviction, does not preclude the action the Court takes today.  Aside from the fact that the Court in *Gonzalez-Lopez* specifically reaffirmed *Wheat*, *see id.* at 144, 147 n.3, the Court also made it clear that

"the right to counsel of choice does not extend to defendants who require counsel to be appointed for them" – which is Mr. Brownridge's situation – and does not require a court to honor a defendant's waiver of conflict-free representation. *See id.* at 151-52.

**Conclusion**

For the reasons stated above, the Court, acting on its own motion, disqualifies Mr. Neely from acting as counsel for Mr. Brownridge in the anticipated retrial. The Court has made contact with the Federal Defender Program to secure replacement counsel for Mr. Brownridge.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: July 10, 2008